(818 P.2d 1184)

No. 66,243

MARK E. ROBINSON, *Appellant*, v. MCBRIDE BUILDING COMPANY, INC., A Kansas Corporation, and MAX RIEKE BROTHERS, INC., A Kansas Corporation, *Appellees*, and RIEKE CONCRETE SYSTEMS, INC., A Kansas Corporation, *Defendant*.

Opinion filed October 11, 1991.

*Leland F. Dempsey*, of Dempsey & Kingsland, P.C., of Kansas City, Missouri, and *Gregory D. Bangs*, of Overland Park, for appellant.

*Thomas D. Billam*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellee McBride Building Company, Inc.

*Ronald D. Montieth*, of Knipmeyer, McCann, Smith, Manz & Gotfredson, of Kansas City, Missouri, for appellee Max Rieke & Brothers, Inc.

Before RULON, P.J., GERNON, J., and PAUL E. MILLER, District Judge, assigned.

GERNON, J.: Mark E. Robinson appeals the denial of his motion for a new trial. The issue on appeal is whether the trial court erred by allowing peremptory challenges to remove the only three black jurors from the jury panel in this civil case.

The facts are not in dispute. Mark Robinson, then age five, was injured while playing ball in his backyard. Robinson chased after a ball and fell headfirst into an excavation at a home site under construction adjacent to his home.

Robinson filed suit against McBride Building Company, Inc., (McBride) the owner of the property, and Max Rieke Brothers, Inc., (Rieke Brothers) and Rieke Construction Systems, Inc., (later corrected to Rieke Concrete Systems, Inc.). Rieke Brothers was the excavation contractor and Rieke Concrete Systems, Inc., was the foundation subcontractor. Rieke Concrete Systems, Inc., obtained summary judgment and is not involved in this appeal.

Robinson's counsel informed the trial judge before voir dire that he wanted to make a record of black and minority veniremen in the event defendants utilized their peremptory strikes to remove minorities from the jury panel.

After voir dire but before the jury was sworn, Robinson's counsel noted that the defendants had used their peremptory challenges to strike all three black members remaining on the panel after the panel was examined for cause and contended that such use of peremptory challenges was a violation of his client's right to due process. Robinson's counsel stated that the defendants must articulate a valid reason that would "survive appropriate scrutiny" to justify removal of the black jurors from the panel. He further stated that he intended to appeal should the outcome disfavor his client. At the end of Robinson's case, counsel for Robinson, outside the hearing of the jury and for the purpose of preserving the issue on appeal, raised again the peremptory strikes and asked the court for the record to reflect that Robinson was black.

The jury found none of the defendants at fault. Robinson moved for a new trial based on the alleged discriminatory use of the peremptory challenges by the defendants. The trial court denied the motion.

## PRESERVATION OF APPEAL

The defendants assert that Robinson failed to properly preserve his claim for appeal. They contend that Robinson merely expressed a desire to make a record, stating an opinion and a feeling that the defendants should articulate a neutral reason for their peremptory challenges.

K.S.A. 60-246 states:

"Formal exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, *makes known to the court the action which he or she desires the court to take or his or her objection to the action of the court and his or her grounds therefor*; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party." (Emphasis added).

The defendants note that Robinson failed to object to the jury or request its discharge. They cite *State, ex rel., v. Fadely*, 180 Kan. 652, 660, 308 P.2d 537 (1957), and *National Van Lines v. Jones*, 192 Kan. 338, 341, 388 P.2d 660 (1964), for the proposition that a constitutional issue not duly raised, argued, and relied upon by the court is not preserved and will not be decided on appeal. Both cases dealt with the constitutionality of a statute and whether that issue had been preserved for appeal. The court in both cases recognized the general rule that only those questions presented to and decided at trial would be considered on appeal.

The question here is whether the record supports Robinson's position that an objection was made and whether the record clearly shows that the court ruled on said objection.

The Kansas Code of Civil Procedure does not address challenging the jury panel, other than to allow peremptory strikes and strikes for cause.

The record reflects that, after voir dire was completed and before the jury was sworn in, a bench conference was held, at which time Robinson's attorney again raised the point regarding the peremptory challenges and also stated that the defendants must articulate a valid reason that would survive appropriate scrutiny by the court to justify the removal of the three black jurors from the jury panel. A discussion then took place between the court and the defendants' counsel in which defendants' coun-

sel stated their position that it was unnecessary to articulate a reason for peremptory challenges in a civil case.

After more discussion between counsel for all parties and the court, the following took place:

"MR. DEMPSEY: Judge, I would like the record to be crystal clear on this one factual point that there are no other blacks that have remained after the for cause strikes other than the three that were all removed by these defendants. The record, I think, needs to be crystal clear on that point.

"THE COURT: I think it's clear. Is there any question about it? I just don't know of any rule that they have to articulate any reasons for peremptory challenges.

"MR. DEMPSEY: I am making the record, and I realize that the Kansas Supreme Court has not ruled on this issue yet.

"THE COURT: Okay. Anything else?

"MR. DEMPSEY: Nothing, Judge. Thank you."

Robinson's attorney did not directly request the court to take any action on which the court could rule, nor did he object to the court's failure to compel the defendants to explain the peremptory challenges in order to meet the requirements of K.S.A. 60-246. While the better practice certainly would have been for Robinson's counsel to have requested the court to rule on whether defendants must explain the challenges or request that the jury be dismissed, our reading of the record leads us to conclude that both the court and counsel clearly understood that an objection was being lodged. We read the colloquy between court and counsel to be an argument on a specific objection, of which all parties had been put on notice even before the voir dire began and on which the court ruled when it stated that it knew of no rule which made it necessary to articulate a reason for a peremptory challenge in a civil suit. We interpret this language to be a statement overruling Robinson's objection.

Given this analysis, we conclude that the issue was properly preserved for appeal.

## RACIALLY MOTIVATED PEREMPTORY STRIKES IN A CIVIL CASE

Robinson raises the issue of whether racially motivated peremptory strikes in a civil lawsuit are prohibited by the United States Constitution and Kansas statutes.

Robinson, in alleging the trial court erred by allowing defendants' unchallenged peremptory strikes, relies on *State v. Hood*, 242 Kan. 115, 744 P.2d 816 (1987), in which Kansas adopted the rule stated by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). In *Batson*, the United States Supreme Court ruled that a criminal defendant need only show that he or she is a member of a cognizable group and that the prosecutor has exercised peremptory challenges to remove from the venire members of that group. Further, *Batson* states that a defendant is entitled to rely upon the fact that peremptory challenges constitute a jury selection process that permits "those to discriminate who are of a mind to discriminate." 476 U.S. at 96. Under *Batson*, the defendant must show that an inference is raised that the prosecutor used the practice to exclude the veniremen from the jury on account of their race or group. 476 U.S. at 96.

Recently, the United States Supreme Court, in *Edmonson v. Leesville Concrete Co.*, 500 U.S. ___, 114 L. Ed. 2d 660, 111 S. Ct. 2077 (1991), applied *Batson* to civil cases. In *Edmonson*, the Court found: "A traditional function of government is evident here. The peremptory challenge is used in selecting an entity that is a quintessential governmental body, having no attributes of a private actor." 114 L. Ed. 2d at 676. The Court in *Edmonson* further stated:

"In the jury-selection process, the government and private litigants work for the same end. Just as a government employee was deemed a private actor because of his purpose and functions in [*Polk County v.*] *Dodson* [, 454 U.S. 312, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981)], so here a private entity becomes a government actor for the limited purpose of using peremptories during jury selection. The selection of jurors represents a unique governmental function delegated to private litigants by the government and attributable to the government for purposes of invoking constitutional protections against discrimination by reason of race." *Edmonson*, 114 L. Ed. 2d at 677.

"If a government confers on a private body the power to choose the government's employees or officials, the private body will be bound by the constitutional mandate of race-neutrality." *Edmonson*, 114 L. Ed. 2d at 676.

Therefore, in light of *Edmonson*, it is necessary for us to decide whether *Edmonson*, which was decided five months after the

January 3, 1991, judgment in Robinson's case, should be retrospectively applied.

Kansas has addressed retrospective application of the *Batson* rule to criminal cases. In *Hood, Batson* was retrospectively applied in light of *Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). "*Batson* must be applied retroactively to cases which are pending upon direct appellate review, or which were not final, at the time the new rule was established." *Hood,* 242 Kan. at 117. That rule is being followed in Kansas criminal cases. *State v. Waterberry,* 248 Kan. 169, 172, 804 P.2d 1000 (1991).

The United States Supreme Court noted in *Griffith,* 479 U.S. at 322, that civil retroactivity was governed by the standard in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106-07, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971). In *Chevron,* the United States Supreme Court dealt with nonconstitutional issues involving the Outer Continental Shelf Lands Act but noted that it had "recognized the doctrine of nonretroactivity outside the criminal area many times, in both constitutional and nonconstitutional cases." *Chevron,* 404 U.S. at 106.

*Chevron* held three factors relevant to determining whether a judicial decision should be retroactively applied. These are:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, [citation omitted] or by deciding an issue of first impression whose resolution was not clearly foreshadowed [citation omitted]. Second, it has been stressed that '[the court] must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' [Citation omitted.] Finally, [the court should weigh] the inequity imposed by retroactive application . . . ." *Chevron,* 404 U.S. at 106-07.

See *In re Estate of McDowell,* 245 Kan. 278, 281, 777 P.2d 826 (1989).

*McDowell* merely restated the *Chevron* factors, stating a "judicial decision may be applied prospectively only if: (1) the decision establishes a new rule of law; (2) retroactive application would not further the principle on which the decision is based; and (3) retroactive application would cause substantial hardship or injustice." *McDowell,* 245 Kan. 278, Syl. ¶ 2.

Most recently, the United States Supreme Court, in *James B. Beam Distilling Co. v. Georgia*, 501 U.S. ___, 115 L. Ed. 2d 481, 111 S. Ct. 2439 (1991), limited the application of the *Chevron* analysis.

In *Beam*, the petitioner sought to retroactively apply the United States Supreme Court's decision in *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 82 L. Ed. 2d 200, 104 S. Ct. 3049 (1984), which held that a Hawaii law imposing an excise tax on imported liquor was unconstitutional, to a similar Georgia state law on a claim arising on facts antedating that decision. *Beam*, 115 L. Ed. 2d at 486. The question presented was "whether it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." *Beam*, 115 L. Ed. 2d at 491.

Under *Beam*, "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Beam*, 115 L. Ed. 2d at 493. Once a new rule of federal law is retroactively applied, "it is chosen for all others who might seek its prospective application." *Beam*, 115 L. Ed. 2d at 493. Given *Beam*, the *Chevron* analysis need not be considered. The *Chevron* analysis applies only in cases where the Supreme Court applies a new rule prospectively and a state court then deals with the issue of whether to apply that new rule prospectively or retroactively.

The effect of *Beam*, insofar as we are concerned, is that the four options to be considered in the application of overruling decisions under *Vaughn v. Murray*, 214 Kan. 456, 465-66, 521 P.2d 262 (1974), are now reduced to two options where the overruling decision involves application of a new federal rule of law. Those two options are:

"(1) Purely prospective application where the law declared will not even apply to the parties to the overruling case. . . . (3) General retroactive effect governing the rights of the parties to the overruling case and to all pending and future cases unless further litigation is barred by statutes of limitation or jurisdictional rules of appellate procedure." *Vaughn*, 214 Kan. at 465.

In *Edmonson*, the United States Supreme Court applied the new constitutional rule of federal law to the litigants of the case.

Therefore, under *Beam*, we are required to retroactively apply the rule from *Edmonson* to all similar litigation pending and not barred by procedural requirements or res judicata.

Given our conclusion that the appeal is not barred by any jurisdictional rule of appellate procedure and that there is no issue raised concerning the statute of limitations, we conclude that the ruling in *Edmonson* is applicable here.

For the reasons stated herein, this case is remanded to the district court for further proceedings. If, upon hearing the matter, the trial court determines that the defendants had a neutral reason for striking the three black jurors by peremptory challenge, no further proceedings are required and the verdict is affirmed. If, however, the trial court concludes that the defendants exercised peremptory challenges to remove from the venire, without a neutral reason, members of a cognizable group of which the plaintiff, Robinson, is a member, then the court shall set aside the verdict and order a new trial.

Reversed and remanded with directions.