Essie **WASHINGTON** as **Executrix**
of the **Estate** of **Fielding**
**Jones, Appellant,**

v.

Robert P. **GOODMAN, M.D., Appellee.**

No. 91–CA–0470–MR.

Court of Appeals of Kentucky.

May 1, 1992.

Joe F. Childers, Phillip J. Shepherd, Shepherd & Childers, Frankfort, for appellant.

John Famularo, James Taylor, Stites & Harbison, Lexington, for appellee.

Before DYCHE, MILLER and SCHRODER, JJ.

MILLER, Judge.

Essie Washington, as executrix of the estate of Fielding Jones, brings this appeal from a judgment of the Fayette Circuit Court entered upon an adverse jury verdict. We remand with directions.

The facts are these: On or about July 7, 1987, Essie's decedent, Fielding Jones, an elderly black man, fell at home and suffered a fracture of his right hip. He was taken to Central Baptist Hospital, Lexington, Kentucky, where Dr. Robert P. Goodman (Goodman), a white orthopedic surgeon, surgically pinned the broken hip with a hip nail. Jones was discharged on July 31, 1987, but was readmitted on August 4, 1987, when the hip became dislocated. At that time, it was discovered that Jones had contracted an infection. He was treated and discharged to the Lexington Manor Nursing Home (Lexington Manor) on September 14, 1987. Although he continued to receive medication for the infection, it failed to respond. On October 28, 1989, his right leg was amputated.

On September 16, 1988, Jones sued Dr. Goodman, alleging negligence in the care and treatment received by him.[1] After Jones's death on June 22, 1990, his action was revived in the name of his executrix, Essie Washington. Kentucky Revised Statute (KRS) 411.140. The case proceeded to trial on December 3, 1990, and resulted in a verdict for Goodman. This appeal follows.

Essie raises the following issues on appeal: (1) Goodman improperly used his peremptory challenges to exclude black jurors; (2) the testimony of Goodman's expert, Dr. Michael Hattwick, should have been excluded; and (3) the trial court erred in not directing a verdict in her favor. We address the issues in reverse order.

In addressing the trial court's refusal to grant a directed verdict, we deem

1. Baptist Hospitals, Inc. (owner of Central Baptist Hospital), and Lexington Manor Nursing Home were also originally named as defendants in the suit, but were released following pre-trial settlements.

that reasonable minds would have differed on the issue of negligence, and the trial court therefore properly submitted the case to the jury. Where the evidence is replete with conflicts from beginning to end, the resolution of those conflicts, as well as the resolution of questions of credibility of the many witnesses, is for the jury—not the trial judge. The standard for granting a motion for directed verdict is clearly articulated in *Taylor v. Kennedy,* Ky.App., 700 S.W.2d 415 (1985). A trial court is precluded from entering a directed verdict unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ. *Id.* at 416. We believe the trial judge properly denied Essie's motion for a directed verdict.

Essie's next allegation of error encompasses a variety of objections to the testimony of Goodman's expert, Dr. Michael Hattwick (Hattwick). Apparently, Hattwick had been identified by Central Baptist Hospital, prior to its dismissal, as an expert in the field of infectious diseases. However, Hattwick was a practicing internist. Essie, therefore, objects to Hattwick's qualifications to testify regarding the detection and treatment of Jones's infection. She also objects that Hattwick's testimony was "duplicative," representing "needless presentation of cumulative evidence." Finally, Essie complains that Hattwick was not identified by Goodman (as one of *his* experts) in a timely manner and, consequently, his testimony, which included references to Jones's claims against

Central Baptist Hospital and Lexington Manor, should have been excluded.

We assign no merit to Essie's complaints relative to Hattwick's testimony. As there are no precise standards for qualification of an expert, it has long been that the decision as to qualifications of a witness as an expert rests within the discretion of the trial court. Any lack of specialized training goes only to the weight, not to the competency, of the evidence. *See Arndale v. Parndell Peay,* Ky., 411 S.W.2d 473 (1967); *Ingersoll–Rand Co. v. Rice,* Ky.App., 775 S.W.2d 924 (1989); and *Lee v. Butler,* Ky.App., 605 S.W.2d 20 (1979). Furthermore, a trial court has the power to control the course of litigation, including control of the amount of evidence produced on a particular point. *Woods v. Commonwealth,* Ky., 305 S.W.2d 935 (1957), and *Johnson v. May,* 307 Ky. 399, 211 S.W.2d 135 (1948). The overall fairness of a trial is within the sound discretion of the trial judge. We find no error.

We turn now to Essie's contention that Goodman's use of peremptory challenges [2] to exclude black jurors was impermissible. Following *voir dire,* but before the parties actually exercised their peremptory challenges, Essie requested the trial court to apply to jury selection the rule of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding that the Fourteenth Amendment precludes peremptory challenges predicated upon race, and that once a defendant in a criminal case makes a *prima facie* showing of discrimi-

---

**2.** Kentucky Rule of Civil Procedure 47.03 provides:

PEREMPTORY CHALLENGES

(1) In civil cases each opposing side shall have three peremptory challenges, but co-parties having antagonistic interests shall have three peremptory challenges each.

(2) If one or two additional jurors are called, the number of peremptory challenges for each side and antagonistic co-party shall be increased by one.

(3) After the parties have been given the opportunity of challenging jurors for cause, each side or party having the right to exercise peremptory challenges shall be handed a list of qualified jurors drawn from the box equal to the number of jurors to be seated plus the

number of allowable peremptory challenges for all parties. Peremptory challenges shall be exercised simultaneously by striking names from the list and returning it to the trial judge. If the number of prospective jurors remaining on the list exceeds the number of jurors to be seated, the cards bearing numbers identifying the prospective jurors shall be placed in a box and thoroughly mixed, following which the clerk shall draw at random the number of cards necessary to comprise the jury or, if so directed by the court, a sufficient number of cards to reduce the jury to the number required by law, in which latter event the prospective jurors whose identifying cards remain in the box shall be empaneled as the jury.

nation, the burden shifts to the prosecution to demonstrate a neutral explanation for the challenges). The trial court denied application of the *Batson* rule, stating the rule was limited to criminal cases. After the court's ruling, Goodman used his three peremptory challenges to strike two black jurors and one white. A third black juror was seated to hear the case. It appears that after the conclusion of the case and before submission (there having been seated thirteen jurors), the single black juror was removed from the panel by lot, thus leaving the decision in the hands of twelve white jurors.

To create the issue presented for our consideration, approximately six months after Essie's trial, the United States Supreme Court, in *Edmonson v. Leesville Concrete Co., Inc.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), extended the *Batson* rule to civil cases. The basis of the extension is that private litigants exercising peremptory challenges are involved in state action, thus implicating the Fourteenth Amendment.

Having protected the record at trial, Essie on this direct appeal contends that the *Edmonson* decision should be retroactively applied. Such an application would require that the trial court reconsider the matter to determine whether Essie can make a *prima facie* case of discrimination. The burden would then shift to Goodman to demonstrate a "neutral explanation" for employing two of his three allocated peremptory challenges to exclude members of the black race.

We agree with Essie that her decedent, Jones, would have been entitled to the benefit of *Edmonson.* Because the rule enunciated in that case involves the extension of a federal right, we believe its fruits are mandated by the Supreme Court's decision in *James B. Beam Distilling Co. v. Georgia,* 501 U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). The question of retroactivity of Supreme Court decisions wherein a new rule is announced has had a somewhat varied past. *Cf., e.g. Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding the rule of

*Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), does not require retroactive application to convictions challenged on *habeas corpus* ); *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (retroactive application of newly declared constitutional rules to criminal cases pending on direct appeal); *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (holding the *Batson* rule was not to be applied retroactively to a state conviction on federal *habeas* review); *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (recognizing prospective application of a new rule where, *inter alia,* inequities might arise from retroactive application); *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (holding a court may apply a new rule in the criminal case before it, but return to the old rule as to all other cases arising on facts pre-dating the pronouncement); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (refusing to extend new exclusionary rule to state convictions that had become final); and *Great Northern R. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932) (holding federal law does not prevent a state from choosing between prospective operation of its decision and that of relation backward). In *James B. Beam Distilling Co.,* 111 S.Ct. at 2449, however, the Supreme Court spoke with exceptional clarity to the effect that "once the Court has applied a rule of law to the litigants in one case, it must do so with respect to all others not barred by procedural requirements or *res judicata.*" We think that decision dispositive of the case before us, and it now seems that the rule of retroactivity in civil cases is limited only by the need for finality.

To buttress our position, we have unearthed the state case of *Robinson v. McBride Building Co., Inc.,* 16 Kan. App.2d 120, 818 P.2d 1184 (1991), involving the issue of *Edmonson's* retroactivity, which we think is particularly apropos. Trial counsel had raised the *Batson* issue and was rebuffed by the trial court. On appeal, the Kansas appellate court was

faced with applying the *Edmonson* rule to the civil trial which had occurred some five months earlier and was not yet final. The Court, on the authority of *James B. Beam Distilling Co., supra,* remanded for a *Batson* determination.

In view of the foregoing authorities and considering this case was terminated short of a *prima facie* showing of discrimination, we are compelled to remand this case to the circuit court for a hearing in order to determine if Essie can establish a *prima facie* case of discrimination in Goodman's exercise of his peremptory challenges. If so, the court must then ascertain if Goodman can articulate a neutral basis for the two black peremptory challenges. Failing to do so, the circuit court shall vacate the judgment and assign the case for retrial.

For the foregoing reasons, this cause is remanded to the circuit court for proceedings on the allegation of impropriety in jury selection.

All concur.