RENDERED:  DECEMBER 23, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1019-WC

LYONS HR                                                          APPELLANT

v.
PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-19-01425

LAKESHA WASHINGTON;
HONORABLE BRENT DYE, ADMINISTRATIVE
LAW JUDGE; and WORKERS'
COMPENSATION BOARD                                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND KRAMER,
JUDGES.

KRAMER, JUDGE:  In this workers' compensation matter, Lakesha Washington

was awarded temporary total disability benefits ("TTD"), permanent partial

disability benefits ("PPD"), and medical benefits from Lyons HR for what an

Administrative Law Judge ("ALJ") determined was a compensable low-back injury Washington sustained while working for Lyons on July 14, 2019. Lyons thereafter appealed to the Workers' Compensation Board, which affirmed. Now, Lyons appeals to this Court.

As it did below, Lyons argues the ALJ committed reversible error by relying upon Washington's medical expert, Dr. Bruce Guberman, as substantial evidence in support of Washington's award because, in its view, Dr. Guberman was unaware of Washington's pre-existing back issues. Lyons also argues there was no objective evidence of a harmful change to Washington's low back due to the July 14, 2019 work event. Lyons argues the ALJ erred in adopting the maximum medical improvement ("MMI") date provided by Dr. Guberman for Washington's low back (*i.e.*, December 20, 2019). Further, Lyons argues the ALJ erred in finding Washington lacks the physical capacity to return to her previous work due to her low-back injury for purposes of the "3" multiplier specified in Kentucky Revised Statutes ("KRS") 342.730(1)(c)1. Upon review, we discern no reason to part from the Board's rationale, set forth below, for rejecting each of these same arguments. Thus, we affirm.

Regarding the procedural and factual history of this matter, we note at the onset that it initially involved two separate injuries on two separate dates: (1) an alleged injury to Washington's right knee on July 6, 2019, which the ALJ found

non-compensable; and (2) the injury to Washington's low back on July 14, 2019, which is the focus of this appeal. Because this appeal only concerns her low-back injury, an extensive discussion of the medical evidence related to her alleged right-knee injury is unnecessary. With that said, the Board accurately summarized the relevant factual and procedural history of this matter as follows:

> Washington testified by deposition on October 31, 2019 and at the hearing held March 9, 2020. Washington, born in June 1991, resides in Lexington, Kentucky. In September 2015, a vehicle struck Washington as she was crossing the street. An ambulance transported her to the emergency room at the University of Kentucky, and she completed a course of physical therapy. Washington ultimately underwent an ACL reconstructive surgery to the right knee, and she missed approximately one year of work following the accident. Washington eventually returned to work without restrictions, and she testified her right knee had fully recovered. Washington denied injuring her low back in September 2015.
>
> Washington worked for the Salvation Army at the time of her September 2015 accident. Thereafter, she worked at a Quality Inn, a beauty supply store, on an assembly line packing boxes, and Comfort Inn, in apartment maintenance for two years, and for a private property owner. Washington began working for Lyons at the Four Points Sheraton in March 2019 as a housekeeper/assistant manager. Washington testified she had no ongoing right knee problems when she began working for Lyons, nor did she have any low back symptoms at all prior to July 6, 2019. Washington had no restrictions at the time of the July 6, 2019 or July 14, 2019 work events, and she was able to perform full duty without limitations.
>
> As assistant manager/housekeeper, Washington managed ten to fifteen employees and performed housekeeping

tasks on a regular basis. In addition to her management duties, she stripped linens, ensured cleaning carts were stocked and ready, vacuumed, cleaned bathtubs, and bent over onto her hands and knees to mop the floor with a rag. Washington maneuvered cleaning carts weighing at least thirty-five pounds, and lifted them over thresholds. She also carried linens, bedding, towels, pillows, and soaps.

Washington testified that on July 6, 2019 she knelt down to retrieve bed linens from the cleaning cart. When she got up, she experienced a pop in her right knee causing her [to] fall. Her employer sent Washington to Concentra for treatment. Washington was released to full duty work after x-rays of her right knee were taken. She missed no work after the July 6, 2019 event, but had continued difficulty with her right knee and required assistance with her housekeeping duties.

Washington testified that on July 14, 2019 she slipped in water on the bathroom floor and fell onto her back. A corroded pipe had apparently ruptured causing the wet floor. Washington experienced pain in the middle of her back radiating down into her right buttock and leg, and numbness in her right leg and foot. Washington was transported to the emergency room by ambulance and she subsequently treated at Concentra. Washington has not returned to any work since the July 14, 2019 work incident.

Washington continues to experience right knee symptoms. She also has low back pain radiating into her right leg and foot, as well as numbness, tingling, and a cold sensation in her right foot. Washington stated she is unable to bend or kneel down. Washington estimates she is able to lift up to seven pounds and can stand continuously for up to twenty minutes at a time due to her low back condition. Washington does not believe she can return to her job as assistant manager/housekeeper or

any of her other previous jobs due to her low back and right knee symptoms.

Washington acknowledged she sought counseling for depression and anxiety due to the 2015 accident in February 2019. However, she disputed or did not recall the references to continued knee and back pain, and her intention to reach out to pain management.

Both parties filed records from Concentra. A July 11, 2019 right knee x-ray was reported as normal. An August 20, 2019 right knee MRI was negative except for the previous placement of an intact ACL graft. Dr. Richard Ramirez noted Washington did not show up for her August 22, 2019 appointment. He reviewed lumbar and right knee MRIs, which he stated did not demonstrate a need for additional care. He diagnosed right knee and lumbar strains. Dr. Ramirez released Washington from his care, found she had attained MMI from her injuries, and indicated she could return to full duty work without restrictions.

On September 16, 2019, Dr. Norman Ellingsen noted Washington reported she previously injured her right knee in 2015, and underwent ACL reconstruction surgery. Washington reported the July 6, 2019 work event, and a subsequent slip and fall injuring her low back and right knee. Washington's complaints included low back pain and numbness radiating into her right leg and foot. Washington denied having previous low back issues. Dr. Ellingsen reviewed an August 20, 2019 lumbar MRI, which demonstrated minimal spondylosis with facet mild hypertrophy and slight disc bulges at L4-L5 and L5-S1. Dr. Ellingsen diagnosed a lumbar strain and right knee post remote right ACL reconstruction. He recommended a right knee MRI and lumbar epidural injections. He also restricted Washington from working until completion of the right knee MRI.

Lyons filed medical records predating the July 2019 work injuries from UK Health Care, Integrated Medical Solutions, Clark Regional Medical Center, and Newtown Counseling Center. On September 18, 2015, Washington presented at the UK emergency department after a car struck her right side as she was crossing the street. Trauma scans were negative. Washington [was] diagnosed with leg pain.

Washington treated with Dr. Thomas Huhn and Dr. Timothy Wilson at integrated Medical Solutions in 2015 and 2016. On October 6, 2015, Washington reported low back and right knee injuries due to the car accident. Dr. Huhn ordered MRIs of her low back and right knee, as well as physical therapy, prescribed medication, and restricted her from work. Washington complained of increased right leg pain and numbness in her foot on October 26, 2015. A November 16, 2015 right knee MRI demonstrated partial tears of the proximal MCL and ACL, and a lumbar MRI demonstrated an annular disc bulge at L4-5. On November 23, 2015, Washington reported intermittent right knee symptoms and flare-ups of right-sided back pain into her buttocks, but denied radiculopathy or numbness and tingling. Dr. Huhn diagnosed right knee pain with partial tears of the proximal MCL and ACL, and a lumbar strain. He referred her for an orthopedic evaluation for both conditions. He continued her physical therapy and medication. Washington attended physical therapy from October 2015 through December 2016 for her right knee injury.

Dr. Wilson examined Washington on February 10, 2016 for her right knee complaints. He noted Washington had back pain radiating down her right leg. He diagnosed a right knee ACL tear with instability, and prescribed a right knee sleeve. Dr. Wilson saw her again on March 2, 2016 for her right knee symptoms. A September 29, 2016 operative report indicates Dr. Michael Heilig

performed a right knee ACL arthroscopic reconstruction and synovectomy.

Lyons also filed the February 1, 2019 and February 11, 2019 Newtown Counseling Center records. Washington was diagnosed with PTSD and a severe major depressive disorder stemming from several traumas, including the 2015 accident. On February 11, 2019, the counselor noted the following:

> The client reported constant pain after being run over, and subsequent surgeries not helping . . .

> The client experiences constant pain in her knees and back; she reported getting surgery at the recommendation of her doctor after her car accident. The client reported it did not help and made things worse, so she does not want to see him anymore. . . .

> Client plans to reach out to doctor again for pain management. . . .

> What barrier impact [sic] your vocational success?
> Client has constant back and knee pain . . . .

Dr. Rich Lyon evaluated Washington on November 25, 2019 at Lyons' request. Washington reported a car struck her in 2016, and she subsequently underwent right knee surgery. She also reported the July 6, 2019 and July 14, 2019 work events. Washington's complaints included back pain radiating down her right leg with numbness and tingling. Dr. Lyon reviewed the medical records and concluded, "the back pain was active and pre-existed the subject work event. Although not a result of the subject fall, it is my opinion she would benefit from a trial of epidural steroid injections and physical therapy. However, it is my opinion she is not a candidate

for pain medication." Dr. Lyon concluded the July 2019 work events did not cause Washington's low back symptoms. Dr. Lyon did not assign restrictions.

In a February 10, 2020 supplement, Dr. Lyon indicated he reviewed additional records from 2015 through 2016, and Dr. Guberman's report. He emphasized the February 1, 2019 and February 11, 2019 counseling records confirmed Washington experienced back and knee pain prior to the work event. Dr. Lyon assessed an 8% impairment rating pursuant to the AMA Guides for the lumbar condition, which he opined was active and pre-existed the July 2019 work events. Dr. Lyon opined there is no objective evidence of a lumbar injury due to the work event.

Washington filed Dr. Guberman's December 20, 2019 report. Dr. Guberman evaluated her at the request of her counsel. Washington reported she slipped on water in a bathroom and fell on January 14, 2019, injuring her right knee and low back. She reported she experienced right knee pain while carrying linens one week prior to that incident. Dr. Guberman noted Washington's treatment at Concentra, including the August 20, 2019 lumbar MRI demonstrating minimal spondylosis with facet mild hypertrophy and a slight disc bulge at L4-5 and L5-S1. Washington complained of low back pain radiating down her right lower extremity, numbness, tingling, and coldness in her right foot.

The report does not identify the records that Dr. Guberman reviewed in forming his opinion. However, Washington reported the 2015 accident and subsequent surgery to her right knee. Washington denied any prior low back injuries or symptoms. The report does not discuss the medical or counseling records predating the July 2019 work incidents. Dr. Guberman diagnosed Washington with a chronic post-traumatic strain and musculo-ligamentous injury to the lumbar spine, superimposed on pre-existing but dormant degenerative

disc and joint disease due to the slip and fall. Dr. Guberman assessed an 8% impairment rating to the lumbar spine pursuant to the AMA Guides, wholly attributable to the July 2019 work event. Dr. Guberman noted the MRI demonstrated evidence of pre-existing degenerative changes. However, he noted there was no evidence Washington had symptoms, non-verifiable radicular pain, loss of motion, interference with activities of daily living, functional limitations, or lumbar impairment before the July 2019 injury.

Dr. Guberman opined Washington attained MMI on December 20, 2019, the date of his examination. Dr. Guberman opined Washington does not retain the physical capacity to return to the type of work performed at the time of her injury. He restricted Washington from standing and/or walking for more than twenty minutes at a time, or more than three or four hours in an eight-hour workday. He opined Washington is unable to kneel, squat, climb up or down ladders, or work at heights, and she should avoid stairs.

In the opinion, the ALJ first determined the July 6, 2019 work event resulted in a temporary right knee injury. Regarding the July 14, 2019 work incident, the ALJ also determined Washington sustained a temporary right knee injury, which resolved and she returned to its baseline level as of August 22, 2019. The ALJ determined Washington sustained a permanent low back injury due to the July 14, 2019 work event, stating *verbatim* as follows:

> The July 14, 2019 acute traumatic event produced a permanent low back injury. The ALJ determines that Dr. Guberman's findings, opinions, and conclusions are the most credible and persuasive. The primary reasons are the objective diagnostic studies and Washington's testimony better supports his opinions.

The February 11, 2019 Newtown Counseling Center note establishes that Washington advised she experienced back pain. This note, however, does not specifically localize where exactly the pain was located. It also does not state that Washington experienced radicular-type symptoms. The ALJ infers that Washington's primary symptoms involved her right knee, which had required extensive treatment and surgery. The note indicated that the surgery had not helped.

The ALJ infers that the right knee problem was the one causing Washington the most difficulty, and potentially required pain management treatment. Although Washington actively experienced back pain, there is not any credible evidence that it produced ongoing radicular-type symptoms. This, however, changed after the July 14, 2019 acute traumatic event.

Washington underwent a lumbar spine MRI on August 20, 2019. The MRI revealed that Washington has L4-SI disc bulges. It also revealed spondylosis, and mild facet hypertrophy. Dr. Lyon opined the study further showed "slight retrolisthesis of L5 on S1." The August 20, 2019 MRI showed more advanced findings than the one Washington underwent approximately three years and nine months earlier.

On November 16, 2015, Washington underwent a lumbar spine MRI. This study only showed an L4-5 annular disc bulge. It did not reveal any significant L5-S1 findings. The August 20, 2019 MRI, which

Washington underwent after falling on her back, revealed an L5-S1 disc bulge and slight retrolisthesis.

The ALJ finds Washington's acute traumatic event produced a lumbar strain and further aggravated her underlying degenerative disc and joint disease. Drs. Ramirez, Ellingsen, and Guberman diagnosed a lumbar spine strain. Dr. Guberman further opined that the strain was superimposed on Washington's degenerative disc and joint disease.

Again, although Washington experienced some prior active back pain, there is not any credible evidence her symptoms actively radiated into her right hip or leg. Dr. Guberman noted that Washington had, "radiation of pain into her right leg, and those are non-verifiable radicular complaints." He also found Washington had reduced motion. This is an objective medical finding. There is also not any credible evidence that Washington actively experienced reduced lumbar motion immediately before her work-related trauma occurred.

Washington testified that her low back symptoms have persisted, and actively cause functional problems. The credible evidence establishes Washington's symptoms have persisted, and her low back condition has not returned to its preinjury – slightly symptomatic, and non-radicular symptoms – state. The ALJ finds that the July 14, 2019 work-related trauma caused a low back strain/sprain and further aroused and exacerbated Washington's underlying pre-existing degenerative disc and joint disease.

-11-

The ALJ, relying upon Dr. Ramirez, determined Washington reached MMI from her temporary right knee injury on August 22, 2019. The ALJ determined Washington attained MMI from her low back injury on December 20, 2019, the date Dr. Guberman examined her. He found Dr. Ramirez's opinion that Washington reached MMI on August 22, 2019 was unpersuasive since he did not examine her on that date. The ALJ also noted both Drs. Ellingsen and Lyon recommended additional medical treatment for Washington's lumbar condition after August 22, 2019. Dr. Ellingsen recommended lumbar steroid injections on September 16, 2019. Dr. Lyon also recommended a trial of epidural steroid injections and physical therapy on November 25, 2019. The ALJ awarded TTD benefits from July 15, 2019 through December 20, 2019.

The ALJ relied upon the 8% impairment rating assessed by Dr. Guberman for Washington's low back injury, fully attributable to the July 14, 2019 work event. The ALJ noted there was no credible evidence she actively experienced radicular symptoms or reduced lumbar motion immediately prior to the work-related trauma. Instead, the ALJ found the evidence demonstrated Washington experienced just low back pain, which did not warrant an impairment rating. The ALJ determined Washington is not permanently totally disabled from her work injuries. The ALJ also found Washington does not retain the physical capacity to return to her pre-injury work based both upon Dr. Guberman's opinion and her own testimony.

The ALJ awarded TTD benefits, PPD benefits, and medical benefits for Washington's low back injury. The ALJ awarded limited medical benefits from July 6, 2019 through July 11, 2019 for Washington's temporary July 6, 2019 right knee injury. The ALJ awarded limited medical benefits from July 14, 2019 through August 22,

2019 for Washington's temporary July 14, 2019 right knee injury.

Lyons filed a petition for reconsideration essentially raising the same arguments it [would later raise on appeal before the Board]. The ALJ denied the petition, making the following additional findings of fact:

> First, the Defendant asserts the ALJ patently erred, because he "completely dismisses the pre-existing medical records as being immaterial." The ALJ respectfully disagrees. The ALJ accurately understood and summarized these records. The ALJ further explained the reason why he chose not to follow them.
>
> The ALJ addressed the Plaintiff's prior and most recent lumbar spine MRIs. The ALJ also analyzed the Newtown Counseling records, and explained why, at least for the low back condition, he did not find them persuasive.
>
> Just because the Plaintiff may have experienced radicular-type symptoms in early 2016, does not automatically mean she also actively experienced them immediately before her work injury. As the ALJ noted, the 2019 lumbar spine MRI showed more advanced findings than the 2015 MRI.
>
> Secondly, the Defendant asserts the ALJ patently erred, because "there are no objective harmful back changes identified after the July 14, 2019 event." The ALJ respectfully disagrees. The Defendant overlooks the objective August 20, 2019 MRI's findings, as well as Dr. Bruce Guberman's objective findings that the

-13-

Plaintiff had reduced lumbar motion. These constitute objective medical findings.

Third, the Defendant asserts the ALJ patently erred, because Dr. Lyon is the more qualified physician, and Dr. Guberman did not know the Plaintiff had a pre-existing back condition. The ALJ respectfully disagrees.

The Defendant points out that Dr. Lyon is an orthopedic physician, whereas Dr. Guberman is not. Just because a person does not have specialized training, does not mean he is not an expert in a particular field or subject. Washington v. Goodman, 830 S.W.2d 398, 400 (Ky. App. 1992). The Washington Court stated that "[a]ny lack of specialized training goes only to the weight, not to the competency, of the evidence." Id.

The ALJ may consider the medical witness' credentials and qualifications when weighing the evidence. Yocum v. Emerson Elec. Co., 584 S.W.2d 744 (Ky. App. 1979). The ALJ, however, is not required to provide a specialist's opinions greater weight than a non-specialist's opinions. Id.

An ALJ may rely on a physician's causation opinion, even when it is based on an incomplete history, if other credible and substantial evidence support the physician's opinion. GSI Commerce v. Thompson, 409 S.W.3d 361, 365 (Ky. App. 2012). The reason is the physician's incomplete history does not automatically invalid [sic] his/her opinions, it only affects the credibility, persuasiveness and weight, which the ALJ

-14-

determines.  Luttrell v. Cardinal Aluminum Co., 909 S.W.2d 334 (Ky. App. 1995).

The Cepero case, which the Defendant cited, also supports this principle.  Cepero v. Fabricated Metals Corp., 132 S.W.3d 839, 842 (Ky. 2004).  The Cepero Court stated that a "[m]edical opinion predicated upon such erroneous or deficient information that is completely unsupported by any other credible evidence can never, in our view, be reasonably probable."  Id. (emphasis added).

The Cepero case thus stands for the principle that ". . . where it is irrefutable that a physician's history regarding work-related causation is corrupt due to it being substantially inaccurate or largely incomplete [and there is not any other credible evidence that supports it], any opinion generated by a physician on the issue of causation cannot constitute substantial evidence."  Id.

Although Dr. Guberman may not have reviewed the Plaintiff's prior low back medical records, or knew she actively experienced some minor low back pain, he did review the August 20, 2019 MRI or at least its report.  This MRI revealed more advanced findings than the one the Plaintiff underwent following her 2015 motor vehicle accident.  The new MRI, in fact, showed pathology involving a completely new disc level (L5-S1).  The L5-S1 level revealed a bulge and slight retrolisthesis.

Dr. Guberman not having a completely accurate history does not automatically disqualify his opinion.  It simply affected his

-15-

opinion's weight, credibility, and persuasiveness.  The ALJ found the objective MRI, which showed additional pathology, supported Dr. Guberman's ultimate opinion.

The ALJ made the following findings addressing Lyons' arguments regarding MMI and Washington's physical capacity to return to her previous work:

> Fourth, the Defendant asserts the ALJ patently erred, because he found the temporary right knee injury and the permanent low back injury reached maximum medical improvement on different dates.  The ALJ respectfully disagrees.
>
> Not all body parts heal at the same rate, and reach MMI at the same time.  The ALJ's decision explains why the ALJ determined the right knee and low back reached MMI on different dates.
>
> . . . .
>
> It is immaterial whether the Plaintiff actually underwent the recommended injections or physical therapy.  The ALJ never stated that the Plaintiff required this treatment to reach MMI.  Instead, these recommended treatment forms, at least to the ALJ, supported Dr. Guberman's later MMI date and the fact Plaintiff had not reached MMI on August 22, 2019 or the date that Dr. Lyon's opinion suggests.
>
> Finally, the Defendant, in pertinent part, asserts the ALJ patently erred, because "[f]inding this particular Plaintiff to be credible is an abuse of discretion . . . .  There

-16-

is nothing remotely credible about this Plaintiff." The ALJ respectfully disagrees.

The ALJ has the ability to pick and choose which evidence to find credible and persuasive. This includes evidence from the same witness or proof. The ALJ found the Plaintiff credible in some regards, while not credible in others.

An ALJ may rely on the claimant's self-assessment, concerning his/her physical abilities, when determining whether the claimant retains the physical capacity to perform his/her pre-injury work. Ira A. Watson Dept. Store v. Hamilton, 34 S.W.3d 48 (Ky. 2000); Carte v. Loretto Motherhouse Infirmary, 19 S.W.3d 122 (Ky. App. 2000). A claimant's testimony, however, does not compel any particular result. Hush v. Abrams, 584 S.W.2d 48 (Ky. 1979). Moreover, an interested witness's testimony, even if un-contradicted, does not bind the fact-finder. Grider Hill Dock v. Sloan, 448 S.W.2d 373 (Ky. 1969); Bullock v. Gay, 177 S.W.2d 883 (Ky. 1944).

The ALJ appropriately relied on the Plaintiff's credible testimony and Dr. Guberman's credible opinion to find that the Plaintiff did not retain the physical capacity to perform her pre-injury job.

Lyons subsequently appealed to the Board. There, reiterating its accusations that Washington had been dishonest about the history and extent of her low-back symptoms, Lyons continued to assert the ALJ had erred in assessing the weight of the evidence. Specifically, it urged that pursuant to the holding of

-17-

*Cepero*,[1] Dr. Guberman's opinion could not constitute substantial evidence capable of supporting the ALJ's determination that Washington had sustained a work-related low-back injury because Washington had not informed Dr. Guberman of her pre-existing back issues indicated in the 2015 and 2016 medical records or in her February 2019 counseling records.

Citing Dr. Lyon's medical opinion, Lyons argued *no* objective evidence supported Washington sustained a harmful change to her low back due to the July 14, 2019 work event.

Regarding MMI, Lyons argued the ALJ erred in relying upon the date specified in Dr. Guberman's report (*i.e.*, December 20, 2019). Lyons maintains that while Dr. Guberman examined Washington on that date, Dr. Guberman's report failed to explain why an earlier date may not have been more appropriate.

Finally, Lyons argued the ALJ erred in finding Washington lacks the physical capacity to return to her previous work due to her low-back injury for purposes of applying the "3" multiplier to Washington's award. This argument, like those preceding it, was largely premised upon Lyons' perception of Washington's credibility. Furthermore, Lyons asserted Washington had not been given any restrictions relating to her low back.

Upon review, the Board disposed of Lyons' arguments as follows:

---

[1] 132 S.W.3d 839.

Lyons requests this Board to re-weigh the evidence and substitute its judgment for that of the ALJ. This we cannot do. The ALJ acted squarely within his discretion in relying upon the opinions of Dr. Guberman instead of those provided by Dr. Lyon. The ALJ accurately summarized the evidence, provided a thorough analysis, and specifically outlined why he relied upon Dr. Guberman's opinion over those of Dr. Lyon regarding Washington's low back condition. The ALJ was not compelled to find Washington's low back symptoms were due to the 2015 accident.

Lyons' reliance on Cepero v. Fabricated Metals Corp., supra, is misplaced. Cepero involved not only a complete failure to disclose, but also affirmative efforts by the employee to cover up a significant injury to the left knee two and a half years prior to the alleged work-related injury to the same knee. The prior, non-work-related injury left Cepero confined to a wheelchair for more than a month. The physician upon whom the ALJ relied was not informed of this prior history by the employee and had no other apparent means of becoming so informed. Every physician who was adequately informed of this prior history opined Cepero's left knee impairment was not work-related but, instead, was attributable to the non-work-related injury two and a half years previous. In Cepero, the Supreme Court found a medical opinion erroneously premised on the claimant's egregious omission of directly relevant past medical history was sufficient to mandate reversal based on an insufficient history received by the medical expert. The Court held a "medical opinion predicated upon such erroneous or deficient information that is completely unsupported by any other credible evidence can never, in our view, be reasonably probable." Id. (emphasis added).

The ALJ acknowledged in the Order on petition for reconsideration that Dr. Guberman may not have reviewed Washington's previous records related to her low back or have been aware of her prior symptoms.

However, he identified other credible evidence in the record supporting Dr. Guberman's opinion that Washington's low back condition was due to the July 14, 2019 work event. Specifically, the ALJ found persuasive the August 2019 MRI when compared to the previous November 2015 MRI. The ALJ noted the 2015 MRI demonstrated a disc bulge at L4-5 while the new MRI showed pathology at a completely new level at L5-S1. The ALJ additionally noted the February 2019 counseling records did not specify the exact location of Washington's back pain, and did not state whether she experienced radicular symptoms. The ALJ noted the absence of records establishing Washington complained of radicular symptoms from early 2016 until July 14, 2019. The ALJ identified other credible evidence in the record supporting Dr. Guberman's opinion, and therefore he was not required to disregard it. Any incompleteness in the history goes to the weight assigned to an opinion. The weighing of the evidence lies solely within the discretion of the ALJ in his role as fact-finder. Luttrell v. Cardinal Aluminum Co., 909 S.W.2d 334 (Ky. App. 1995).

We additionally find substantial evidence supports the ALJ's determination Washington sustained a low back injury caused by the July 14, 2019 work event. The ALJ relied upon Dr. Guberman's finding of reduced lumbar motion and noted the new pathology demonstrated on the August 2019 MRI in determining the work incident resulted in a harmful change to Washington's low back. The ALJ provided a detailed explanation addressing why he did not find the previous medical records persuasive. Dr. Guberman's opinion, in conjunction with the comparison of the 2015 and 2019 lumbar MRIs, constitutes substantial evidence supporting the ALJ's determination. Therefore, we affirm on this issue.

We likewise determine the ALJ committed no error in adopting the December 20, 2019 MMI date opined by Dr. Guberman. Dr. Guberman's opinion constitutes

-20-

substantial evidence upon which the ALJ could rely, including his opinion of MMI. The ALJ also noted two physicians recommended additional lumbar treatment subsequent to the earlier MMI date provided by Dr. Ramirez. In the Order on reconsideration, the ALJ explained why he determined Washington reached MMI on different dates for her right knee and low back injuries. Substantial evidence supports the ALJ's determination that Washington attained MMI from her low back injury on December 20, 2019.

Substantial evidence also supports the ALJ's determination Washington does not retain the physical capacity to return to her work as an assistant manager/housekeeper. The ALJ relied upon Washington's testimony, as well as Dr. Guberman's opinion. Washington testified she performed housekeeping duties on a regular basis. She stripped linens, prepared and stocked cleaning carts, and pushed and lifted carts weighing at least thirty-five pounds. She was also required to bend down onto her hands and knees to mop the floor. Washington also navigated stairs, and carried linens and product. Washington described her current low back symptoms and stated she could not return to the type of work she performed at the time of the July 14, 2019 injury, "because I hurt my back and I hurt my bum, well, my lower part all the way down. And plus the job description what I have to do, it's no way that I can like go through with it . . . ." Contrary to Lyons' assertion, the ALJ was permitted to give weight to Washington's own testimony regarding her retained physical capacity and occupational disability. Hush v. Abrams, 584 S.W.2d 48 (Ky. 1979).

Dr. Guberman noted Washington complained of lumbar pain radiating into her right hip, leg, and foot, numbness and tingling in her right foot, and a cold sensation in her right foot. She also reported bending, stooping, lifting heavy objects, and prolonged sitting, standing, or walking worsened her low back symptoms. After

-21-

reviewing the physical requirements of Washington's job, Dr. Guberman opined she does not retain the physical capacity to return to her former job. He restricted Washington from standing and/or walking combined for a total of more than 20 minutes at a time, or more than 3 or 4 hours in an 8-hour workday. He opined Washington is unable to kneel, squat, climb up or down ladders, or work at heights, and should avoid stairs.

Washington's testimony, in conjunction with Dr. Guberman's restrictions and his opinions on her physical ability to return to work, constitute substantial evidence supporting the ALJ's determination Washington does not retain the physical capacity to return to work as an assistant manager/housekeeper due to her lumbar injury.

As indicated, Lyons now repeats the arguments it offered to the ALJ in its petition for reconsideration and to the Board in its petition for review. In *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685 (Ky. 1992), the Kentucky Supreme Court described the role of the Court of Appeals in reviewing decisions of the Board: "The function of further review of the WCB in the Court of Appeals is to correct the Board only where the [ ] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88.

With that said, as the Board recognized in its own review of this matter, KRS 342.285 grants an ALJ as fact-finder the sole discretion to determine the quality, character, and substance of the evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308 (Ky. 1993). An ALJ may draw reasonable inferences from the

evidence, reject any testimony, and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Jackson v. General Refractories Co.*, 581 S.W.2d 10 (Ky. 1979); *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15 (Ky. 1977). Although a party may note evidence supporting a different outcome than reached by an ALJ, such proof is not an adequate basis to reverse on appeal. *McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46 (Ky. 1974). Rather, it must be shown there was no evidence of substantial probative value to support the decision. *Special Fund v. Francis*, 708 S.W.2d 641 (Ky. 1986). Neither the Board, as an appellate tribunal, or this Court may usurp the ALJ's role as fact-finder by superimposing its own appraisals as to weight and credibility or by noting reasonable inferences that otherwise could have been drawn from the evidence. *Whittaker v. Rowland*, 998 S.W.2d 479 (Ky. 1999).

In sum, Lyons remains dissatisfied with what the ALJ regarded as substantial evidence, and how that evidence was weighed.[2] However, that is little reason to part with the Board's sound analysis, which we hereby adopt. The ALJ

---

[2] Lyons also insinuated, in one sentence of its fifteen-page brief before the Board, that by contrasting the report of Washington's 2015 MRI with that of her 2019 MRI, noting the differences between the two, and citing those differences as evidence of objective changes in Washington's low back over time, the ALJ effectively rendered an improper medical opinion. While Lyons' formerly one-sentence insinuation in that vein has now become a two-page argument before this Court, it is enough to say that it deserves no more analysis than what it was given by the Board: Nothing about the ALJ's discussion of that evidence suggests that the ALJ overstepped his fact-finding authority.

correctly applied the law; and because the ALJ's rulings were reasonable under the evidence, they may not be disturbed on appeal. We therefore AFFIRM.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donald J. Niehaus
Lexington, Kentucky

BRIEF FOR APPELLEE LAKESHA
WASHINGTON:

McKinnley Morgan
London, Kentucky