**Glenn THOMPSON, Appellant,**

**v.**

**MAYFLOWER COAL COMPANY et al.,
Appellees.**

Court of Appeals of Kentucky.

May 22, 1964.

Dan Jack Combs, Pikeville, for appellant.

Emmett G. Fields, Whitesburg, for appellees.

PALMORE, Judge.

In this Workmen's Compensation proceeding the referee found that "the plaintiff is disabled now but it is all caused and brought about by the disease of osteoarthritis and none of said disability was caused by the accident of September 5, 1961." That finding was affirmed by the full board and sustained on appeal to the Letcher Circuit Court.

It is the claimant's contention that his disability is the result of a herniated disc. The board having found against him, he is entitled to a reversal only if on the basis of all the evidence in the case it is clear that this was the only conclusion reasonable men could draw.

On September 5, 1961, while working in a coal mine, claimant was momentarily pinned against a pile of loose coal by a coal car. Thereafter he experienced pain in his abdomen, back and left leg, but continued to work until January 8, 1962. Meanwhile, he called Dr. T. M. Perry, a local physician, to his home on September 9 and 14, 1961, complaining of pains shooting through his back and leg. He says he had never had any trouble with his back or legs prior to September 5, 1961, but Dr. Perry, testifying for the employer company, says he had seen him previously for his back condition, that at no time did he mention an injury, and that he (the doctor) "took it for granted it was a spondylitis or osteo-arthritis of the lumbar spine" and prescribed a muscle relaxant. Dr. Perry made another home call on claimant January 9, 1962, the day after he quit work, and conducted a physical examination just before testifying in July of 1962, at which time he had the additional benefit of X-rays taken under the direction of Dr. A. W. Shiflet, an orthopedic surgeon. Dr. Perry was still of the opinion that the claimant's condition resulted from osteoarthritis, spondylitis (lumbago), or spondylolisthesis, and that he would not have been able to continue working after September 5, 1961, if he had suffered a herniated disc at that time. It was Dr. Perry's judgment that the condition had developed slowly and progressively over a period of 4 or 5 years, resulting from disease and not trauma.

Dr. E. E. Musgrave, an "industrial medicine" specialist practicing in Letcher County, examined claimant on January 24, 1962, and found a weakness and atrophy of certain muscles in the left leg. Based on this examination, including a history given by the patient, he was of the opinion that a "nerve injury due to a herniated disc" sustained in the accident was the cause. He said claimant was a stoic type of individual and that his continuing to work for several months was not necessarily inconsistent with having sustained such an injury.

Dr. B. F. Wright, a general practitioner of Letcher County, examined claimant in June of 1962 in behalf of the company. He too used Dr. Shiflet's X-rays. His diagnosis was osteoarthritis originating well before the date of the accident: "I could find nothing * * * sometimes trauma may produce osteoarthritis, but in this case it is my opinion that the condition found was entirely due to the disease. * * * I could see nothing in the spine of [sic] the X-rays or physical examination that indicated a herniated disc."

Dr. Shiflet, the orthopedic surgeon, examined claimant in June of 1962 in behalf of the company and had X-rays taken, which "showed osteoarthritis, mild, of lumbar spine with degeneration and narrowing of L5–S1 interspace. * * * I could not find sufficient objective findings to substantiate a diagnosis of herniated lumbar disc, nor could I find sufficient objective findings to substantiate his claim of disability incident to the injuries he described." He pointed out that a myelogram is the most important diagnostic aid in determining the presence of a herniated disc. (Myelography was not performed in this case.)

Dr. Gene Combs, a specialist in radiology, inspected Dr. Shiflet's X-rays and observed that on the "third, fourth and fifth lumbar vertebrae bodies there are moderate osteoarthritic spurs on the anterior bones of the articular plates. Otherwise the spine is normal in appearance." He testified for claimant and in response to a hypothetical question expressed the opinion that the arthritic condition was not sufficient to account for the disability, but that it probably was attributable to nerve injury and pressure.

As may be seen from this brief summary of the evidence, there is a distinct possibility of a herniated disc, and at least two of the medical witnesses think it is probable. Dr. Shiflet, the orthopedic surgeon, answering a hypothetical question on

cross-examination, conceded that he would pursue the investigation further. However, both he and the other physicians who testified for the company were of the opinion, in substance, that in the absence of further information the disease of osteoarthritis appears to be the more probable diagnosis. Claimant, of course, had the burden of proof and bore the risk of nonpersuasion. Cf. Lee v. International Harvester Company, Ky., 373 S.W.2d 418. Under the circumstances we are unable to say that it was clearly unreasonable of the board not to be convinced by his evidence when viewed against the evidence on the other side.

The real issue on this appeal is raised by claimant's contention that because Dr. Combs was the only specialist in radiology among the medical witnesses, his testimony should outweigh that of the others. In other words, there should be grades of experts. Perhaps so, but such a grading falls within the fact-finding province. We should hesitate to do it as a matter of law except in a case of extreme and obvious contrast. We do not have that in this case. It is a matter of judicial notice that an orthopedic surgeon, such as Dr. Shiflet, has to be a pretty fair hand at reading X-rays. Moreover, even though Dr. Combs may have a greater competence in how to employ an X-ray machine to best advantage and to interpret what is shown on the film, once he has done that we presume that other specialists would be more qualified than he to relate his findings in terms of specific physiological significance and effect. In other words, conceding the radiologist was best able to identify the presence of arthritic spurring, the probable effect of that condition on some other part of the body would not necessarily be any more within his than any other physician's competence to judge. As a matter of fact, it is interesting to note that Drs. Shiflet and Combs described what the X-rays showed in virtually the same terminology, one using the word "moderate" where the other used "mild." We find nothing to suggest that

Dr. Combs' opinion had greater probative value than Dr. Shiflet's on the relationship between the spinal arthritic condition and the weakening of the leg.

 It is further contended that when, as in this case, the expert medical witnesses disagree the board should be required to seek the opinion of one or more disinterested experts. A 1946 amendment to KRS 342.315 making such an appointment mandatory on application of either party was repealed in 1948. See c. 37, § 8, Acts of 1946, and c. 151, § 3, Acts of 1948. We assume therefore that the legislative body intended the board to have its discretion in that respect. So be it.

The judgment is affirmed.