**Eurbin R. SULLIVAN, Appellant,**

v.

**FOSTER & CREIGHTON COMPANY and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

May 28, 1965.

Rehearing Denied Nov. 19, 1965.

Charles A. Williams, Paducah, for appellant.

Robert Manchester, Wheeler, Marshall & Manchester, Paducah, for appellees.

PALMORE, Judge.

Eurbin Sullivan, a heavy equipment operator, suffered a badly comminuted fracture of the right heel in a fall of some 10 feet or more from a ladder onto a concrete surface. He claimed workmen's compensation for permanent total disability. KRS 342.095. The board made an award based on a finding of 25% permanent partial disability. KRS 342.110. The award was affirmed by the circuit court and Sullivan appeals.

It is conceded that the claimant is 100% disabled, but the board found in effect that 75% of the disability is attributable to a herniated intervertebral disc not proved to have been caused by the accident. The question we have to decide is whether upon the whole case a finding of total disability resulting from the accident was the only reasonable conclusion to be drawn from the evidence, that being the basis on which a claimant bearing the burden of proof and risk of non-persuasion can prevail as a matter of law over an adverse factual finding. Cf. Akers v. United Carbon Gas Company, Ky., 386 S.W.2d 957, 959 (1965); Thompson v. Mayflower Coal Company, Ky., 379 S.W.2d 459, 461 (1964); Lee v. International Harvester Company, Ky., 373 S.W.2d 418, 420 (1963).

At the time of his injury Sullivan was 48 years old and in good health. For 33 years he had operated earth moving equipment such as bulldozers, draglines and the like. This work requires use of the feet as much as the hands. According to his own testimony, which was not contradicted, he had never been hospitalized prior to the accident, nor had he experienced symptoms of any trouble that might reasonably be related to his present condition. Also uncontradicted was his testimony that he has not been involved in any accident or sustained any injury since his fall from the ladder on July 28, 1960.

The first physician to see the claimant upon his admission to a hospital immediately after the accident was Dr. James T. Fuller, of Mayfield, who did not testify in this proceeding. Dr. Fuller later signed for defendant's insurance company a "Surgeon's First Report of Injury" describing the accident as follows:

."Working for Foster & Creighton on new General Tire plant near Mayfield and a ladder slipped out from under him and he fell about 10 feet injuring right foot and back."

On the same report the nature and extent of injury and objective findings were noted as "Fracture os calcis—right."

The hospital card made out for Sullivan on July 28, 1960, notes that about 2:30 P.M. that day "a ladder slipped out from under him and he fell about 10 ft. injuring rt. foot and hurt back—X-ray—Fracture Os Calcis."

The fractured heel was reduced[1] by Dr. J. S. Robbins, a general practitioner and surgeon of Mayfield, and the patient's leg was put in a cast. He was kept in the hospital for a week or so and remained in the cast for six to eight weeks. He used crutches until April of 1961. After the fractures had healed his foot remained to some extent deformed and swollen and he was continuing to suffer pain. On October 20, 1960, Dr. Robbins referred him to Dr. Samuel L. French, of Paducah, an orthopedic surgeon.

Dr. French treated Sullivan for about a year, until October of 1961, at which time the swelling had lessened and the motion of the ankle had improved, but otherwise the symptoms were essentially the same— that is, he still suffered pain upon weight-bearing. The doctor recommended a triple arthodesis, which is a surgical procedure to fuse and thus immobilize three joints of the foot. The purpose of such a procedure is to reduce or eliminate pain resulting from interaction of the joints in question, two of which directly involve the heel bone. Sullivan elected not to undergo surgery.[2]

It was Dr. French's opinion that if a great deal of strain on the claimant's foot is required by his normal occupation he would be disabled from performing it and would have to seek other employment. We quote as follows the salient portions of his testimony in this respect:

Q— "Considering the fact that this man's occupation is that of a heavy equipment operator, in which he is required to use his feet on rough, uneven surfaces—navigating over rough, uneven surfaces—and exerting pressure on brake pedals that are used to assist in turning equipment, what would be the extent of his disability as a result of this?"

A— "I would think he would have some difficulty. I don't know that I could describe his disability. I believe he would have difficulty operating anything on an uneven surface."

Q— "You think he would be able to perform a day's work with that heavy equipment under those circumstances?"

A— "I don't know how much is actually required of the man, but if he had to stand and walk, I believe he would have a job doing a day's work if he had to put his foot down where it comes under a strain."

Q— "Do you mean then that you think he would have difficulty doing that at all?"

A— "I think so, yes."

Q— "Do you mean by that that you think he would be disabled from performing that type of work, and be required to seek other employment?"

A— "If a lot of strain were required of that foot, I'd say yes."

And on cross-examination:

Q— "Doctor, have you reached a percentage of disability in regard to this man's foot?"

---

1. A process described by one of the other medical witnesses as loosening the impacted bone fragments by pounding with a padded mallet and then molding them back into shape.

2. We do not have before us the question of whether this was an unreasonable failure to follow competent medical advice within the provision of KRS 342.035 (2).

A— "I don't know if I have stated it in any report that I have written, but I believe on January 25, 1961, I reached an approximation of his percentage of disability."

Q— "What was that percentage?"

A— "Fifty percent."

At a hearing held on January 19, 1962, Sullivan testified that he had been assigned to two or three jobs by his union but was unable to use his right foot and could not operate the brake pedal of a dragline. He said that his foot continued to hurt when he walked on it. The local business representative of his union testified that the operation of heavy earth-moving equipment requires excellent physical condition and that a person with an impaired foot could not do it for any appreciable length of time.

When the case was first submitted, the only evidence in the record was that which has been thus far summarized, excluding Dr. Fuller's "Surgeon's First Report of Injury" and the hospital record, which were introduced later. The defendant company did not offer any evidence. The referee assigned to consider the case found 50% disability to the body as a whole but inadvertently applied KRS 342.105 as a limitation of the recommended award. On the claimant's motion for a full board review the board remanded the case "for taking of further proof on the sole issue of the extent of disability, if any, to the body as a whole, sustained by the plaintiff."

Pursuant to this order of remand only one item was added to the record, and that was an affidavit by Dr. French, stipulated to be considered as evidence. It reads as follows:

"The affiant further states that from his findings the plaintiff would have pain on prolonged standing or walking on smooth surfaces and that walking on rough ground would give him considerable pain. That because of the location of the injury in the lower extremity which is a weight bearing joint, when the joint surface is roughened or uneven or irregular it will swell and putting effort on the joint will cause pain. That anyone with this injury who must walk on uneven surfaces or in carrying a load of any kind will aggravate the condition. That if the plaintiff had a job requiring that he put his foot down where it would come under a strain he would be disabled from performing that type of work and would be required to seek other employment. That due to the weight bearing function of the lower extremity the pain would radiate upward into the leg affecting the activity of the entire body. Mr. Sullivan would be totally disabled from performing this type job. He could do light work which did not involve average weight bearing or use of his foot.

"Affiant further states that the area of pain complained of by the plaintiff is consistent with the pain found in this type of injury and there is no question that the injury is serious and disabling. That this injury is a permanent one."

At this stage of the proceeding the claimant was entitled, as we view it, to an award based on permanent total disability. Leep v. Kentucky State Police, Ky., 366 S.W.2d 729 (1963). However, after expiration of the time fixed for the production of further evidence the board, being still dissatisfied, ordered him examined by an impartial physician for the purpose of determining whether "the plaintiff's disability is a result of the accident and injury * * * and if so, the degree and duration of said disability, if any." [3] KRS 342.315. Here the

---

3. It will be noted that this is the first time any real question as to the causal connection between the injury and the disability was injected into the case.

In remanding, the board had confined its inquiry to "the sole issue of the extent of the disability, if any, to the body as a whole, sustained by the plaintiff."

case takes a rather unusual turn. Apparently by coincidence, the board appointed a physician who had theretofore examined Sullivan at the request of his counsel but had not been used as a witness. This was Dr. Dale Furnell, an orthopedic surgeon of Paducah.

Dr. Furnell had first examined Sullivan on November 19, 1961, and had made about the same clinical findings as Dr. French, but estimated "his disability due to this injury at 25% with regard to his previous occupation." After again examining him on March 11, 1963, Dr. Furnell commented on his condition as follows:

"The right foot at this time * * * shows a much greater restriction in the range of motion than it did on the examination of November 19, 1961. X-rays made of the right foot and ankle on March 11, 1963, show increased sclerosis of the articulating surfaces of the talus and calcaneous where they oppose, particularly in the middle third area. My impression is that there is a residual valgus deviation of the right os calcis from this injury, with a consequent subtalar traumatic arthritis involving the talo calcaneo joint of the right foot. * * * My impression of the effects of this injury as it influences Mr. Sullivan's ability to perform the duties of his usual occupation are that his working ability, due to the foot injury, is limited 25%, as is his overall bodily disability by the effects of this injury. In my report of March 13, 1963, I said that considering also the present symptomatology of the lumbar spine, even though *I have no knowledge* that this is attributable in any way to the injury of July 28, 1960, his present disability, considering this, would be 100%, because he does have very severe limitation which he did not have in November of 1961. * * * My impression of it was that he has 25% over-all disability as a consequence of the effects of the injury." (Emphasis added.)

In his report to the board Dr. Furnell had noted that in the area of his right ankle and heel Sullivan was sensitive to pain on pressure, and that motion of the subtalar joint elicited *"a very exquisite pain."* When cross-examined on this point he admitted that any kind of weight-bearing on the foot would involve the subtalar joint, and that it is reasonable to assume that the same type of pain would result from the performance of his regular occupation. Nevertheless, he stuck to his opinion that the limitation "of his normal activity in the foot is 25%." Asked whether the pain would not make it impossible for the claimant to do the work of a heavy equipment operator, he replied, "I would not say it would render it impossible." Neither, however, did he say it would not. This witness conceded also that in the absence of an arthrodesis the condition of the foot is likely to grow worse with continued use.

■ Now, at this point and before considering the remainder of the testimony, which was introduced subsequently and relates entirely to the back condition observed by Dr. Furnell in March of 1963, it seems to us that the proof of Sullivan's incapacity to perform his usual occupation, resulting from the foot and ankle condition alone, leaves no room for reasonable difference of opinion. Dr. Furnell's remark that he "would not say" is essentially non-committal and therefore of no probative value. Cf. Horton v. United States Steel Corporation, Ky., 384 S.W.2d 73, 74 (1964), and cases therein cited. His description of the condition of Sullivan's foot and ankle can be reconciled with the estimate of 25% disability only on the theory that he did not fully understand the meaning of "disability" as it has been defined and firmly settled with regard to the workmen's compensation law of this state. The evidence is overwhelming that this claimant cannot use his right foot in the manner necessary in order for him "to perform the type of work demanded by his occupation." Cf. Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905, 906 (1964). To hold otherwise under the

evidence in the record would simply be (and was) arbitrary.

The evidence relating to the disc injury makes the claimant's case even stronger. According to Dr. Furnell, Sullivan did not complain of back trouble. "What particularly drew my attention to it was the way he walked when he came in the office." This was on the occasion of the last examination, in March of 1963. In November of 1961 he had found no symptomatology of a herniated disc. Though he was of the opinion that such a condition ordinarily results from an injury, he thought it likely that if the injury had occurred on July 28, 1960, Sullivan would have been aware of it and *would have complained of it at that time*. He went on to explain that when he saw the patient in November of 1961, sixteen months after the accident, the symptoms could have subsided as the result of rest and inaction.

From the information he had, Dr. Furnell said he had no way to be certain whether the disc injury had been precipitated by the accident on July 28, 1960. But in so testifying he had not been advised of Dr. Fuller's "Surgeon's First Report of Injury" and the hospital card on which notations of back injury had been entered at a time immediately following the accident. These were introduced by stipulation after Dr. Furnell had testified. In addition, the board permitted the claimant to testify further and to produce a new witness, Dr. J. M. Hunt, Jr., a general practitioner of Wickliffe, Kentucky, where the claimant makes his home.

Sullivan himself testified that when he first entered the hospital he had pain in the back of his right hip, extending downward into the calf of his leg, but that after two or three days "when they put me in the bed and taken all the weight off of it, and then that cast, and had it all, well, I had my leg all propped up, and my back seemed to quit hurting me and when I got back out on my crutches, going, why it began hurting me, which I thought it was from packing so much weight and giving to it, see." In other words, the man quite naturally thought his aches and pains were mere discomforts attributable to the weight of the cast and the way in which he was required to walk. Nonetheless, in April of 1962, between visits to Dr. French, the specialist in Paducah, he went to see Dr. Hunt about his back.

Dr. Hunt was Sullivan's "family doctor" and had known him for many years. Between 1957 and 1962 he had seen and treated him on numerous occasions in connection with minor ailments. On April 13, 1962, Sullivan came to his office with a back complaint. They had theretofore discussed his foot and back since the accident, but not on a professional or physician-patient basis. Dr. Hunt concluded at this time that the patient had either a ruptured disc or a severe back strain, and prescribed medication for pain relief. Based on his own knowledge of the patient together with further details of the case provided by way of a hypothetical question he testified as follows:

"From my experience of treating Mr. Sullivan, like I say I have treated him since 1957 and I have known him all my life and I have never known of any more accidents he has sustained or been involved in and with you giving the history of his injury in 1960 and my findings in 1962 and '63 I feel strongly that the injury which he received in 1960 is the total cause of his back trouble and his foot, of course."

If there is anything in this case of real substance to refute or reduce the conclusive force of the evidence indicating total disability resulting from the accident of July 28, 1960, we do not find it inside the record.

The judgment is reversed with directions that an award be entered on the basis of permanent total disability.