OWENSBORO MERCY HEALTH
SYSTEM, Appellant/Cross–
Appellee,

v.

Charles William PAYNE and Bobby G.
Payne, as Co–Guardians for Robert G.
Payne Appellees/Cross–Appellants.

No. 1997–CA–002901–MR (DIRECT AP-
PEAL) and No. 1997–CA–002938–
MR (CROSS–APPEAL).

Court of Appeals of Kentucky.

Aug. 10, 2000.

Discretionary Review Denied by
Supreme Court Aug. 16, 2000.

Case Ordered Published by
Supreme Court Aug. 16, 2000.

Ronald G. Sheffer, John A. Sheffer, Ronald G. Sheffer, Owensboro, for appellant/ cross–appellee.

Richard Hay Somerset, Kentucky, Laurence R. Dry, Oak Ridge, Tennessee, Charles Kamuf Owensboro, Richard Hay, Somerset, for appellees/cross–appellants.

BEFORE: EMBERTON, GUIDUGLI and HUDDLESTON, Judges.

*OPINION*

EMBERTON, Judge:

This is a medical malpractice action brought by Robert Payne and his co-guardians after Payne allegedly received negligent care during his treatment for injuries received in an automobile accident. The appellant, Owensboro Mercy Health System raises the following issues: (1)

whether the trial court erred in finding Payne's experts competent to render opinions regarding the applicable standards of care; (2) whether the use of a videotape during the trial was proper; (3) whether it was error to admit the standards of the American Society of Anesthesiologists into evidence and permit the jury to take those standards to the deliberation room; (4) whether a superseding cause relieved the hospital of liability; and (5) whether the damages were excessive. Payne cross-appeals alleging that the trial court erred in setting post-judgment interest at less than 12%, in failing to award prejudgment interest on liquidated damages, and in reducing his taxable court costs by 70%.

On May 30, 1994, Payne was involved in a head-on collision with another vehicle. His wife was killed, and Payne was transported to Owensboro Mercy where he underwent an eight to eight and one-half hour operation by Dr. Joseph Polio, an orthopedic surgeon. Although Dr. Daryl Rampton began the operation as anesthesiologist, Dr. Ross Cotton was the anesthesiologist during most of the surgery including the conclusion at approximately 5:25 a.m.

At the conclusion Payne was prepared for the transfer from the operating room to the Intensive Care Unit. He was disconnected from supplemental oxygen and from the heart and pulse monitor while being moved from the operating table to a moveable hospital bed. Accompanied by nurses and Dr. Cotton, Payne was then transferred from the operating room to ICU. Within minutes of his arrival in ICU, he suffered cardiac arrest resulting in brain damage. He has since been in a persistent vegetative state.

Prior to trial, Payne settled his claims against Drs. Cotton and Rampton and their employer. The case against Owensboro Mercy proceeded to trial with the jury finding it to be 30% at fault in causing Payne's injuries. Owensboro Mercy now

appeals from the $2,278,728.65 judgment rendered against it.

Owensboro Mercy argues that Payne's experts were incompetent to testify as to the standard of care, and the breach of that standard, by the hospital and its staff in treating post-operative patients while being transferred to ICU. Specifically, it objects to the admission of the testimony of Dr. Peter Tuteur and Ms. Shelby Smith, neither of whom is an anesthesiologist.

██ Dr. Tuteur is an internist and pulmonologist from Washington University in St. Louis and is experienced in treating patients with respiratory difficulties. He testified that Owensboro Mercy was negligent in failing to provide supplemental oxygen, portable heart monitoring, and a portable pulse oximeter during Payne's transfer from ICU, which he stated, caused Payne's brain damage. Ms. Smith, is a certified critical care nurse, who has cared for critically ill patients for nineteen and one-half years. She testified that it was the duty of the hospital staff to provide supplemental portable oxygen, portable EKG monitoring, and portable pulse oximeter monitoring. She further testified that the failure of the hospital nurses to recognize Payne's signs of distress was due to their lack of training in post-operative techniques as required by hospital policy.

██ Owensboro Mercy contends that because neither Dr. Tuteur nor Ms. Smith is an anesthesiologist nor otherwise experienced in the transfer of patients from the operating room to ICU their testimony is not competent under Kentucky Rules of Evidence (KRE) 702. The qualification of a witness as an expert rests within the sound discretion of the trial court. "Any lack of specialized training goes only to the weight, not to the competency, of the evidence." [1] There are numerous reported cases where a physician has been held qualified to express an opinion on medical

---

**1.** *Washington v. Goodman*, Ky.App., 830    S.W.2d 398, 400 (1992).

matters outside his area of expertise.[2] Medical specialization, however, has become the norm, and it is conceivable that a physician in one area will have no knowledge of another.[3] Rather than promulgating a blanket rule, we believe the best approach remains to defer to the trial court to exercise its discretion in the application of KRE 702 which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Dr. Tuteur is a physician who specializes in pulmonary care. While not experienced in post-operative care, he was competent to testify regarding the effects of anesthetic on the pulmonary system and the measures required to prevent medical tragedy. In addition to his speciality as a pulmonary expert, he is an internist and a teacher of medicine at Washington University. He gave an in-depth description of his qualifications and his preparation for his testimony. Ms. Smith is a critical care nurse and has spent nineteen years caring for critically ill patients, some of whom were treated post-operatively. We do not find the trial court abused its discretion in finding Dr. Tuteur and Ms. Smith competent to express an opinion on the standard of care in dealing with post-operative patients and whether Owensboro Mercy breached that standard.

■ Owensboro Mercy next complains that the introduction of a videotape of the route from the hospital operating room to ICU was error. The tape does not attempt to re-create the actual transfer of Payne but is merely a walk-through of the route. We agree with the trial court that the tape is substantially similar to the fact sought to be proven. The fact that the tape has a timer does not render it inadmissible for the purpose for which it was introduced. It was introduced to show the distance between the two points, not for the purpose of demonstrating the actual transfer. We find no abuse of discretion in its admission.

■ During closing argument, Payne's counsel was permitted to replay to the jury portions of the video testimony of Dr. Cotton. It has been the established rule that counsel in closing argument is given broad latitude to recite and interpret the evidence.[4] The video recording of trials, however, presents the novel question of whether counsel can, as with traditional evidence, replay portions of the trial to the jury during closing. Confronted with this issue, the court in *Condella v. Cumberland Farms, Inc.*[5] held that permission to replay portions of trial testimony is within the discretion of the trial judge with the following cautions:

The court recognizes, however, that there are a number of pitfalls which must be avoided when showing portions of the videotape. The portions of the videotape testimony shown during summation should not be so lengthy as to constitute a second trial emphasizing only one litigant's side of the case. The court must exercise discretion to limit the amount actually played by counsel during summation.

Further, the court must take precautions to guard against the edited portions of the videotape misstating the evi-

---

**2.** *See Kabai v. Majestic Collieries Co.*, 293 Ky. 783, 170 S.W.2d 357 (1943); *Thompson v. Mayflower Coal Co.*, Ky., 379 S.W.2d 459 (1964); *Rogers v. Sullivan*, Ky., 410 S.W.2d 624 (1966).

**3.** *See e.g. Dikeou v. Osborn*, 881 P.2d 943 (1994), where it was held that a cardiologist was not qualified to render an opinion as to the standard of care of an emergency room physician.

**4.** *Jones v. City of Bowling Green*, Ky., 354 S.W.2d 749, 751 (1962).

**5.** 298 N.J.Super. 531, 689 A.2d 872, 875 (1996).

dence. By editing portions of the trial testimony evidence could be presented out of context and could easily confuse the issues or mislead the jury. In order to eliminate this problem ... a hearing should be conducted. The court, out of the jury's presence, should therefore view the proposed portions of the video-tape testimony in open court on the record to make sure that it accurately reflects the evidence. (Citations omitted).

We do not find that the limited use of the tape overemphasized Payne's case nor misrepresented the testimony. Before playing the tape, the trial court held a hearing in chambers to discuss its use and admonished counsel of the pitfalls recognized in *Condella*. We find no error.

■ We find no merit to Owensboro Mercy's claim that the trial court erred in permitting the introduction of the Standards of the American Society of Anesthesiologists.[6]

■ Owensboro Mercy argues that the negligence of Dr. Cotton is a superseding act which relieves it from liability. Evidence was presented that Owensboro Mercy had an independent duty to provide oxygen and monitoring equipment. As stated in *NKC Hospitals, Inc. v. Anthony* [7]:

> All qualified health care providers within the range of care for Mrs. Anthony, were under a duty to exercise their senses and intelligence to investigate and inspect for potential dangers to her. They did not. Their voluntary ignorance of her condition will grant no relief because voluntary ignorance is negligence.... The defense that the hospital's nurses were only following a 'chain of command' by doing what Dr.

Hawkins ordered is not persuasive. The nurses were not the agents of Dr. Hawkins. All involved had their independent duty to Mrs. Anthony.

Additionally, evidence was presented that the standard of care for hospitals requires that Owensboro Mercy provide oxygen and portable monitors to Payne which it failed to do and that the hospital's own policies required that it provide nurses specially trained in post anesthesia recovery.[8]

■ Owensboro Mercy's final argument is that the award of $3,000,000 for future medical expenses is excessive. Although it agrees that it will cost $250,000 per year to care for Payne, it argues that his life span has been drastically reduced and his probable survival for more than seven years is unlikely. Various experts testified regarding the life span of a person in a vegetative state and that of a healthy individual. The jury award was not clearly erroneous.[9]

■ Payne's cross-appeal concerns the interest and costs awarded. Following a motion by Owensboro Mercy to set post-judgment interest at 6% supported by a banker's affidavit, the court, following a hearing, set the interest rate at 9%. Although Owensboro Mercy presented no witnesses at the hearing, the court complied with the hearing requirements of Kentucky Revised Statute (KRS) 360.040 and did not abuse its discretion in setting the interest rate at less than 12%. Nor do we find abuse of discretion in the trial court's refusal to award pre-judgment interest on Payne's past medicals and lost wages. While these damages may be undisputed, Owensboro Mercy, in good faith, disputed its liability and could not have anticipated the extent of that liability.[10]

6. *Davenport v. Ephraim McDowell Mem. Hosp.*, Ky.App., 769 S.W.2d 56 (1988).

7. Ky.App., 849 S.W.2d 564, 568–569 (1993).

8. *Williams v. St. Claire Medical Center*, Ky. App., 657 S.W.2d 590 (1983).

9. *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984).

10. *Wittmer v. Jones*, Ky., 864 S.W.2d 885, 891 (1993).

██ Because the jury found the hospital to be only 30% at fault, the trial court apportioned the costs accordingly. Payne argues that Owensboro Mercy, the only remaining defendant at trial, should bear the entire costs of the litigation. Liability is attributable to the damages caused by the wrongdoing.[11] We can find no basis for Payne's contention that one defendant's refusal to settle a claim should result in its liability for all costs incurred. The award of costs is affirmed. Kentucky Rules of Civil Procedure (CR) 54.04.

11. *Dix & Associates v. Key*, Ky., 799 S.W.2d 24, 28 (1990).

The judgment of the Daviess Circuit Court is affirmed.

ALL CONCUR.